IN THE UNITED STATES DISTRICT COURT FOR
**THE SOUTHERN DISTRICT OF FLORIDA**

iHealthcare, Inc.
A Delaware Corporation

      Plaintiff.

vs.

Empower Holdings Group, LLC,
a Florida Limited Liability Company,              CASE NO.
Empower H.I.S., LLC, a Florida
Limited Liability Company, Empower
Capital Group, LLLP, a Florida Limited
Liability Partnership, Empower Capital
Management, LLC, a Florida Limited
Liability Company, Empower Investment
Group, LLC, a Florida Limited Liability
Company, Perez-Tio Family Trust, LLC,
a Delaware Limited Liability
Company, MAS Lab, LLC, a Delaware
Limited Liability Company, MAS Lab, LLC,
a Florida Limited Liability Company,
Medx Group, Corp., a Florida Corporation,
Lifebrite Management, Inc. a Georgia
Corporation, Jorge E. Perez, Individually,
Jorge A. Perez, Individually, Ricardo J. Perez,
Individually, Carlos Perez, Individually,
Christian Fletcher, Individually.

      Defendants.
_____

## **COMPLAINT**

      Plaintiff, iHealthcare, Inc., a Delaware Corporation., sues Defendants, Empower Holdings

Group, LLC, a Florida Limited Liability Company, Empower H.I.S., LLC, a Florida Limited

Liability Company, Empower Capital Group, LLLP, a Florida Limited Liability Partnership,

Empower Capital Management, LLC, a Florida Limited Liability Company, Empower Investment

Group, Inc., a Florida Limited Liability Company, Perez-Tio Family Trust, LLC, a Delaware

Limited Liability Company, Mas Lab LLC, a Florida Limited Liability Company, Mas Lab LLC, a Delaware Limited Liability Company, Medx Group Corp., a Florida Corporation, Lifebrite Management, Inc., a Georgia Corporation, Jorge E. Perez, Individually, Jorge A. Perez Individually, Ricardo J. Perez, Individually, Carlos Perez Individually, Christian Fletcher Individually, and states:

<u>**JURISDICTION AND VENUE**</u>

1.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between the Plaintiffs and the Defendants and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2.   This Court has personal jurisdiction over each Defendant and co-conspirator, as defined below, because each Defendants and co-conspirators are either a legal entity that conducts business in and maintains operations within the State of Florida and this District, and thus is subject to the general jurisdiction of this Court, or is an entity or individual who has committed acts within the State of Florida because these causes of action arise and has sufficient minimum contacts with this State so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because a substantial portion of the transactions and wrongs complained of herein, including Defendants' participation in the wrongful acts herein alleged and aiding in the commission of the fraud, breaches, and tortious conduct occurred in this District and in this Division and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that have an effect in this District.

4.   This action is not collusive in order to confer jurisdiction on this Court which it would otherwise lack.

5.       This Court also has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the Plaintiff and Defendant are diverse in citizenship and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs, and attorneys' fees.

6.       This Court has supplemental jurisdiction over Plaintiff's claims against all named Conspirators/co-defendants because the claims are so related to claims in this action within such original jurisdiction to form part of the same case or controversy and common nucleus of operative fact(s) with Plaintiff's claims against all Defendants/Co-Conspirators.

7.       Specifically, pursuant to the Agreement, described fully in detail below, the contractual parties agreed in ¶8.i., *inter alia*, " … shall be subject to the exclusive jurisdiction, in Miami, Florida, of either the Florida State Courts or the US District Court."

## PARTIES

### THE INDIVIDUAL PLAINTIFF

8.       Plaintiff, iHealthcare, Inc. ("iHealthcare") was incorporated in the State of Delaware and therefore a resident of Delaware. Its offices are located in Miami-Dade County and conducts substantial business in Miami-Dade County, Florida.

9.       Plaintiff is a nationwide technology enterprise focused on the healthcare industry. It engages in a wide variety of healthcare transactions in that field. It has been in business for about 5 years and has engaged in numerous medically related transactions, joint ventures, and partnerships. Additionally, it has an in-depth knowledge of the medical field, from a financial aspect and is well-known in the industry. Its contacts in its unique industry are unmatched by its peers.

10.     Plaintiff is engaged by others in its field to assist, in a variety of ways, in financial planning and strategic consultation. Some of its clients are often in financial distress so they reach-out to Plaintiff to devise ways to apply technology to decease financial liability by way of operating

cost reduction and expand market share.

## DEFENDANTS

1.      Defendant/Co-conspirator, Jorge E. Perez is a resident of Miami, Florida, County of Miami-Dade. Jorge E. Perez is the father to Jorge A. Perez, Ricardo J. Perez, and Carlos Perez. Jorge E. Perez is the owner of the following entities listed (collectively referred to as "JEP Entities"):

      a.          Defendant/Co-Conspirator Perez-Tio Family Trust, LLC, is a Delaware Limited Liability Entity that conducts business in the State of Florida and Miami-Dade County. The Trust was formed in Delaware on 5/22/2018. Perez-Tio Family Trust is the lender of a Promissory Note for the IP & IT Asset Purchase Agreement, whereas it acted at the direction of "… Perez-Tio Family Trust, LLC at the direction of Empower Holdings Group, LLC (the "Lender"). Additionally, under ¶VII (GOVERNING LAW AND DISPUTE RESOLTUION) the parties agreed that, "this Note shall be governed by and interpreted in accordance with the laws of the State of Florida" and said Agreement is signed by Defendant/Co-conspirator Jorge A. Perez on behalf of Perez-Tio Family Trust.  It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to further the fraudulent scheme to transfer and shield assets, hide ownership of title and defraud iHealthcare and its Shareholders.  *See* Exhibit "1" [Perez-Tio Family Trust Delaware Registration]

      b.          Defendant/Co-Conspirator Empower Capital Group, LLLP ("E-CG"), a Florida Limited Liability Limited Partnership with its principal place of business in Miami-Dade County, State of Florida. The effective date of E-CG with the Florida Secretary of State is 11/20/2018 and Jorge E. Perez signed as the

General Partner.  This entity is owned by Jorge E. Perez.  It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to further the fraudulent scheme to transfer and shield assets, hide ownership of title and defraud iHealthcare and its Shareholders.  *See* Exhibit "2" [Empower Capital Group Florida Registration and Change of Control]

c.        Defendant/Co-Conspirator  Empower  Capital  Management,  LLC ("E-CM"), a Florida Limited Liability Company with its principal place of busines in Miami-Dade County, State of Florida. This entity is owned by Jorge E. Perez. The effective date of E-CM with the Florida Secretary of State is 11/9/2018 and Jorge E. Perez signed as the Managing Manager.  It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to further the fraudulent scheme to transfer and shield assets, hide ownership of title and defraud iHealthcare and its Shareholders.  *See* Exhibit "3" [Empower Capital Management Florida Registration and Change of Control]

d.        Defendant / Co-Conspirator Empower Investment Group, LLC ("E-IG"), a Florida Limited Liability Company with its principal place of busines in Miami-Dade County, State of Florida. This entity is owned by Jorge E. Perez. The effective date of E-IG with the Florida Secretary of State is 1/20/2016 and Ricardo J. Perez signed as a Member or an authorized Representative. The 10/02/20 Amended Annual Report reflects Jorge E. Perez as the electronic signer and Managing Manager. It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to further the fraudulent scheme to transfer and shield assets, hide ownership of title and defraud iHealthcare and its Shareholders. *See* Exhibit "4" [Empower Investment Group Florida Registration

and Change of Control]

e.        Defendant / Co-Conspirator Mas Lab, LLC ("Mas-FL"), a Florida Limited

Liability Company with its principal place of busines in Miami-Dade County, State

of Florida. This entity was formed and registered with the Florida Secretary of State

on (6/1/2019) by Ricardo J. Perez and renewed in January 2020 under Jorge E.

Perez as and Managing Member.  The 01/20/20 Annual Report was amended to

reflect Jorge E. Perez as the Managing Member. It is believed Jorge E. Perez, Jorge

A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to

further the grand scheme to transfer and shield assets, hide ownership of title and

defraud iHealthcare and its Shareholders.   *See* Exhibit "5" [Mas Lab Florida

Registration and Change of Control]

f.        Defendant / Co-Conspirator Mas Lab, LLC ("Mas-DE"), a Delaware

Limited Liability Company with its principal place of busines in Miami-Dade

County, State of Florida. This entity was formed and registered with the Delaware

Secretary of State on (1/22/2016) It is believed Jorge E. Perez, Jorge A. Perez,

Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to further the

grand scheme to transfer and shield assets, hide ownership of title and defraud

iHealthcare and its Shareholders.   *See* Exhibit "6" [Mas Lab Delaware

Registration]

g.        Defendant / Co-Conspirator Medx Group Corporation, ("Medx"), a Florida

Corporation with its principal place of busines in Miami-Dade County, State of

Florida. This entity is owned by Jorge E. Perez, Jorge A. Perez, and Ricardo J.

Perez.   Medx was incorporated in 10/16/2009.    Jorge E. Perez was listed a

President and Ricardo J. Perez as Vice President. The company became Inactive

with the Florida Secretary of State but was reinstated 10/31/14 with Jorge A. Perez listed as President, Ricardo J. Perez listed as Senior Vice President, and Jorge E. Perez listed as 'FO'.  It was administratively dissolved and became Inactive by the Florida Secretary of State on 9/25/2015.   It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, and Carlos Perez use this entity as an instrumentality to mislead, confuse the public, engage in felonious business transactions, transfer, and shield assets. *See* Exhibit "7" [Medx Group Florida Registration, Reinstatement, Change of Control & Admin Dissolution for Annual Report]

2.      Defendant / Co-Conspirator, Jorge A. Perez is a resident of Miami, Florida, County of Miami-Dade. Jorge A. Perez is a Member and/or Partner of the following entities (collectively referred to as "JAP Entities"):

a.       Defendant / Co-Conspirator Empower Holdings Group, LLC ("E-HG, a Florida Limited Liability Company. This effective date for this entity is 1/25/2018 with Jorge A. Perez and Ricardo J Perez listed as Managers.  On 09-25-2020 the company was administratively dissolved for failure to file its annual report.  This entity, as an instrumentality of Jorge A. Perez, entered into the Agreement with iHealthcare and designated Perez-Tio Family Trust, LLC as the payee for the consideration under the Agreement. Both companies are owned and controlled by Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, and Carlos Perez, (hereinafter referred to as Perez Family). It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to further their fraudulent scheme to transfer and shield assets, ownership of title and defraud iHealthcare and its Shareholders.   *See* Exhibit "8" [Empower Holdings Group Florida Registration]

b.       Defendant/Co-Conspirator  Empower Capital Group, LLLP ("E-CG"), a

Florida Limited Liability Limited Partnership with its principal place of business in Miami-Dade County, State of Florida. This entity was created and registered with the Florida Secretary of State on 11/20/2018 and has been renewed. Jorge E. Perez is the General Partner of this entity.  It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to further their fraudulent scheme to transfer and shield assets, hide ownership of title and defraud iHealthcare and its Shareholders.

c.    Defendant/Co-Conspirator Empower Capital Management, LLC ("E-CM"), a Florida Limited Liability Company with its principal place of busines in Miami-Dade County, State of Florida. This entity was created and registered with the Florida Secretary of State on 11/09/2018. Jorge E. Perez is the Managing Partner of this entity.  It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to further their fraudulent scheme to transfer and shield assets, hide ownership of title and defraud iHealthcare and its Shareholders.

d.    Defendant / Co-Conspirator Empower H.I.S., LLC ("E-HIS") is a Florida Limited Liability Company located in Miami Dade County, State of Florida.  This entity was effective 7/1/2014, with Jorge A. Perez as President, Ricardo J. Perez as Executive Vice President and Jorge E. Perez Sr. as Executive Vice President. Peculiarly, the Florida Division of Corporations shows that the Defendants were not listed as Members or Managing Members of this LLC. It was administratively dissolved by the Florida Secretary of State on 9-27-2019. Equally, E-HIS' registered agent is itself (the same company) -- Empower H.I.S., LLC.   It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an

instrumentality to further the fraudulent scheme to transfer and shield assets, hide ownership of title and defraud iHealthcare and its Shareholders.  *See* Exhibit "9" [Empower HIS Florida Registration and Change of Control]

e.       Defendant/Co-Conspirator Perez-Tio Family Trust, LLC, is a Delaware Limited Liability Entity that conducted business in the State of Florida and Miami-Dade County.  It is the lender of a Promissory Note for the IP & IT Asset Purchase Agreement whereas acted at the direction of "… Perez-Tio Family Trust, LLC at the direction of Empower Holdings Group, LLC (the "Lender")." Additionally, under ¶VII (GOVERNING LAW AND DISPUTE RESOLTUION) the parties agreed that, "this Note shall be governed by and interpreted in accordance with the laws of the State of Florida" and the Agreement is signed by Defendant Jorge A. Perez, a Florida resident. It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to further their fraudulent scheme to transfer and shield assets, hide ownership of title and defraud iHealthcare and its Shareholders.

f.       Defendant / Co-Conspirator Empower Investment Group, LLC ("E-IG"), a Florida Limited Liability Company with its principal place of busines in Miami-Dade County, State of Florida. This entity was created and registered with the Florida Secretary of State on 1/20/2016.  Jorge E. Perez. Jorge A. Perez and Ricardo J. Perez are all listed as Managers of this entity.   Jorge E. Perez is the Manager of this entity. It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez uses this entity as an instrumentality to further the fraudulent scheme to transfer and shield assets, hide ownership of title and defraud iHealthcare and its Shareholders.

h.      Medx Group Corporation, ("Medx"), a Florida Corporation with its principal place of busines in Miami-Dade County, State of Florida. This entity is owned by Jorge E. Perez, Jorge A. Perez, and Ricardo J. Perez. Medx was incorporated in 10/16/2009.   Jorge E. Perez was listed a President and Ricardo J. Perez as Vice President. The company became Inactive with the Florida Secretary of State but was reinstated 10/31/14 with Jorge A. Perez listed as President, Ricardo J. Perez listed as Senior Vice President, and Jorge E. Perez listed as 'FO".  It was administratively dissolved and became Inactive by the Florida Secretary of State on 9/25/2015.  It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, and Carlos Perez use this entity as an instrumentality to mislead, confuse the public, engage in felonious business transactions, transfer, and shield assets.

3.      Defendant / Co-Conspirator, Ricardo J. Perez, resident of Miami, Florida, County of Miami-Dade. Ricardo J. Perez is co-owner and employed by Empower entities as the Financial Comptroller for all of the Perez Family entities.  Ricardo J. Perez was also the Managing Member of Mas Lab LLC, (Mas Lab) a Florida Limited Liability Company, until January 2020 when management control was transferred in the registration with the Florida Secretary of State to Jorge E. Perez as the new Managing Manager.  Defendants Ricardo J. Perez, Jorge A. Perez and Carlos Perez share a familial relationship as brothers.  Ricardo J. Perez is a Co-conspirator in the scheme to defraud iHealthcare and its Shareholders.

a.      Medx Group Corporation, ("Medx"), a Florida Corporation with its principal place of busines in Miami-Dade County, State of Florida. This entity is owned by Jorge E. Perez, Jorge A. Perez, and Ricardo J. Perez. Medx was incorporated in 10/16/2009.   Jorge E. Perez was listed a President and Ricardo J. Perez as Vice President. The company became Inactive with the Florida Secretary of

State but was reinstated 10/31/14 with Jorge A. Perez listed as President, Ricardo J. Perez listed as Senior Vice President, and Jorge E. Perez listed as 'FO'.  It was administratively dissolved and became Inactive by the Florida Secretary of State on 9/25/2015.  It is believed Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, and Carlos Perez use this entity as an instrumentality to mislead, confuse the public, engage in felonious business transactions, transfer, and shield assets.

4.      Defendant / Co-Conspirator, Carlos Perez, resident of Miami, Florida, County of Miami-Dade. Carlos Perez is employed by multiple Empower entities as Chief Technology Officer, Head of IT Operations and Software Operations for all of the Perez Family entities. Carlos Perez is a Co-conspirator in the scheme to defraud iHealthcare and its Shareholders.

5.      Defendant / Co-conspirator, Christian Fletcher ("Fletcher"), is a resident of Atlanta, Georgia. Fletcher owns and controls the following entities: Lifebrite Management, Inc., Lifebrite Laboratories, Lifebrite Community Hospitals of Stokes, Lifebrite Community Hospitals of Early and Lifebrite Hospital Group.  Christian Fletcher is a Co-conspirator in the scheme to defraud iHealthcare and its Shareholders.

6.      Defendant/Co-conspirator Lifebrite Management, Inc. ("Lifebrite"), a Georgia corporation and management company to all Lifebrite Hospital entities, National Clinical Testing Laboratory entities that transacted business in the State of Florida. Lifebrite has benefited from iHealthcare software that was illegally acquired, transferred, and modified.  Lifebrite is a Co-Conspirator in the scheme to defraud iHealthcare and its Shareholders. *See* Exhibit "10" [Lifebrite Management Georgia Registration]

## **FACTUAL ALLEGATIONS**

<u>All Defendants / Co-conspirators</u>

7.      iHealthcare detrimentally relied upon intentionally false representations made by Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez and Carlos Perez, prior to, and at the time of, execution of the IP & IT ASSET PURCHASE AGREEMENT" (hereinafter "Agreement").  *See* Exhibit "11" [IP and IT Asset Purchase Agreement]

8.      Leading to execution of the Agreement, and represented in the Agreement, Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, and Carlos Perez through E-HG, that they represented to being the creator, owner and title holder of certain intellectual property clearly itemized in the Agreement. Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez and Carlos Perez though E-HG, represented prior to execution and within the Agreement itself that , *inter alia*, "Any and all inventions, discoveries, improvements, creations, software, source codes, updates, upgrades, derivative works, hardware, data base rights, processes, licenses, concepts, techniques, trade secrets, know how, discoveries, works or ideas (collectively "Creations") whether or not patentable or copyrightable which Empower, et. al. and Jorge A. Perez and Ricardo J. Perez have conceived or made or may conceive or make during the relationship with each other, and/or in any way, directly or indirectly, connected with this Agreement, shall be Assigned and Transferred under each Acquisition and be made the sole and exclusive property of iHealthcare in this Asset Purchase Agreement." *See* Agreement ¶5 "INVENTIONS AND CREATIONS**"**

9.      Separately, Jorge A. Perez and Ricardo J. Perez sold their personal intellectual property as identified in Section [1] of the Agreement that "iHealthcare agrees to acquire…all intellectual property [IP] of Jorge A. Perez and Ricardo J. Perez." This, in addition to the Creations in Section [5] and software and source codes identified in Exhibits A and B of the Agreement and *re-affirmed* by Jorge A. Perez under the Source Code List document dated July 31, 2019.

12

10.     Under the Agreement the parties specifically agreed to, "the transfer of the IT Department Infrastructure and Services, as listed in Exhibit A of this Asset Purchase Agreement, that includes,

 A.  All IT Departments including the existing workforce in the USA and India

 B.  IT infrastructure and license[s] transfer – Data Networks/Storage

 C.  Vendor and Partner contracts

 D.  Telehealth, Telemedicine, Telemetry Projects, and Mobile APPS

 E.  Hardware and Business Software

 F.  Hospital and Physician EMR

 G.  Intellectual Property, including any Copyrights, Brands and/or Trademarks

 H.  Related Business Documents"

*See* Agreement ¶ 1 "TERMS

(Item 11 left blank intentionally)

12.     Pursuant to the Agreement ¶2, consideration consists of: (1) $2,500,000.00 paid by iHealthcare; (2) Perez family may designate an individual to serve on the iHealthcare Board of Directors of iHealthcare; (3) "once the Perez Book of Business generates $250,000.00 net revenue for two consecutive months then appropriate salaries will be provided pursuant to additional negotiations"; and (4) Promissory Note for 100% of the agreed value under this Asset Purchase Agreement.

13.     As per the terms of a Promissory Note the Perez-Tio Family Trust, LLC *at the direction* of E-HG lent $2,500,000.00 to iHealthcare ("Note").  *See* Exhibit "12" [Promissory Note]

14.     iHealthcare, for consideration issued 500,000 shares of company Stock valued at .25 cents per share, valuation of $125,000.00 to the Perez Family and Perez-Tio Family Trust.

15.     Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, and Carlos Perez are the

beneficiary and owners of Perez-Tio Family Trust, LLC and Jorge A. Perez is the authorized representative and signatory as shown on the Promissory Note.

16.     iHealthcare satisfied all conditions and terms of the Agreement and accepted ownership of all assets subject to the Agreement.

17.     Significantly, the Agreement specifically includes an Exhibit "A" Empower IT-IP Platform Inventory" that includes Software, Source Code, Intellectual Property, Creations owned by Empower and transferred to iHealthcare. This software products, intellectual property, creations then became known as "iHealthcare Lab Software" ("Software").  This Exhibit was created and approved by Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, and Carlos Perez.  The Exhibit was presented to iHealthcare by the Perez Family and incorporated into the Agreement.

18.     Prior to 2014, Jorge A. Perez created the intellectual property for a physician billing system known as MedX Billing Software. Jorge A. Perez informed iHealthcare that this intellectual property was the foundation for all derivative products later created at Empower in physician, hospital, and lab billing products, among others, by whatever name. Further Jorge A. Perez informed iHealthcare that Empower HIS (Health Information Systems) had consolidated ownership of all software assets of Jorge A. Perez and Ricardo J. Perez and predecessor companies, including Medx Group Corporation, which was dissolved by the Florida Secretary of State on 09/25/2015.

19.     Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez and Carlos Perez then created a number of derivative products that were identified by Empower in the Exhibit A and B and Source Code List that was provided to iHealthcare.

20.     Further, Jorge A. Perez also created interfaces between various components of the Lab software which could be licensed separately or in combination to operationalize a variety of products. In general, these included, but are not limited to: a Lab Management System and Billing

component which incorporated the "front-end" order entry, patient information, insurance information, source, physician order, sample accessions, reporting, among other features and functions and so on; a "middle-ware" Lab Information System component, which connected to specific analyzers and patient intake information, processed the data and reformatted the data for transmission to the Lab Billing System among other features and functions; and a third "back-end" component Lab Billing System that billed for the services and produced reports.

21.     Prior to 2016, the middle-ware was provided by a third-party license, that was to be transferred to iHealthcare as part of the Lab System. On January 15, 2016, Empower HIS acquired new middle-ware source code and intellectual property from Medical Applied Solutions (MAS), to replace the third-party middle-ware licensed product with new intellectual property owned by Empower HIS. Taken together, the ownership all of this intellectual property, software, source code, creations and all future derivatives and creations [by whatever name given for marketing or sales], by Empower, Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, or Carlos Perez were sold and title transferred to iHealthcare in the Agreement.  *See* Exhibit "13" [Mas Applied Solutions Source Code]

22.     iHealthcare became the owner of the Software known as "iHealthcare Lab Software" through the Agreement. Other than iHealthcare and E-HG, as clearly evident from the representations in the Agreement itself, no other Defendant and/or person(s) was a contractual party and/or signatory other than Jorge A. Perez and iHealthcare. *See* Exhibit "14" (Asset Transfer Letter of Source Code and Software Title to iHealthcare Auditors for SEC disclosures]

23.     After its execution, the Plaintiff filed the Agreement, and all associated/executed agreements, exhibits, and attachments with the United States Securities and Exchange Commission [SEC].   Furthermore, Jorge A. Perez signed and filed a *"consent to file"* document with iHealthcare's auditors and attorneys giving them *his* consent and permission to file documents with

the SEC, which at this time included the executed Agreement. In addition, iHealthcare auditors requested Jorge A. Perez file a Software Title Transfer consent affirmation letter, directly to auditors, of all the software and source code products and assets separately which he did on November 29, 2018.  *See* Exhibit "15" [Filed SEC Agreement per Disclosure Requirements]

24.     As contractually intended, the parties relied on the Agreement to govern their relationship since its execution. Until year 2019, Jorge A. Perez, through E-HG, never disputed its existence and/or performance obligations of the Agreement.

25.     On or about May 21, 2019, iHealthcare served a Notice of Default under the IT & IP Asset Purchase Agreement to Jorge A. Perez, Ricardo J. Perez and Empower Holdings Group, LLC.  The Notice was specific in its claim of Default, and stated: "*This is to notify you that you are in Default of your obligations under the above written contract as a result of Failure to provide, in timely fashion, a fully functional, operational and commercially deployable Electronic Health Records System (EHR) which requires CMS Meaningful Use Stage 3 Certification and a full-working billing platform, among additional defaults addressed in this notice, as stipulated in the Agreement.*" In the Notice of Default, iHealthcare provided a "cure" time for these violations to be corrected, and states: "*Further, you have indicated that you have developed a derivative product, without knowledge or consent [emphasis added], from our intellectual property for skilled nursing facilities.  We assert our rights to this and any and all other product derivatives you have or may develop in the future and demand is hereby made to include in the assets to be delivered.*" The Defendants/Co-Conspirators continue to deprive iHealthcare and its Shareholders of the assets it acquired under the Agreement, and further demonstrates that the Perez Family was actively undermining and scheming to defraud iHealthcare at every opportunity. *See* Exhibit "16" [Notice of Default and Cure]

26.     On May 31, 2019, iHealthcare served Notice of Suspension of Note Payment to

Jorge A. Perez, Ricardo J. Perez, Empower Holdings Group and Perez-Tio Family Trust.  In the Notice, iHealthcare clearly stated: "*The cure period has now lapsed and no effort has been made by you to cure these multiple breaches and definitively transfer the itemized Assets to iHealthcare, Inc.  According to the terms of the Agreement, we are notifying you of our intent to withhold the Promissory Note payment scheduled for June 2019 to Perez-Tio Family Trust, until such time that the terms of the Agreement have been met in full and all Assets have been properly transferred. Meanwhile, be advised we reserve all our Rights to the assets, software, source codes, intellectual property, licensing, equipment, hardware and creations as specified in the IT & IP Asset Purchase Agreement and the IT & IP Transfer Letter.*" Due to the multiple breaches and active schemes to defraud and damage iHealthcare and its Shareholders, the Board of Directors unanimously voted to stop all payments to the Defendants/Co-conspirators until such time as a full cure and delivery of the assets had been achieved.  *See* Exhibit "17" [Notice of Suspension of Note Payment]

27.     While the title and ownership to the software and other products was transferred, the actual source codes of the products were never physically or electronically transferred as required by the Agreement. Empower also intentionally failed to transfer the IT infrastructure listed in the Agreement, which consist of hardware, servers, laptops, PC's, as required, and requested. Consequently, iHealthcare was never given "administrator" access to any of the IT systems or software inventory, as contractually required.

28.     At all relevant times Perez-Tio Family Trust, LLC., at the direction of E-HG and Jorge A. Perez, never placed iHealthcare in default under the Note. And, at all relevant times E-HG has never formally and/or informally noticed iHealthcare of breach of any terms of the Agreement and/or similar.

29.     Shortly after iHealthcare became aware of the fraudulent sale of its' Software and Source Code by Empower HIS and Mas Lab to Lifebrite, iHealthcare notified the CEO and CFO

of Lifebrite of Healthcare's new understanding of this fraudulent transaction and that they illegally and inappropriately acquired and/or were using iHealthcare's software, source code and intellectual property. iHealthcare offered proof of ownership in the form of the Agreement and SEC filings and reserved and asserted all of iHealthcare's ownership Rights.  *See* Exhibit "18" [Letter of Notice to Lifebrite and Christian Fletcher]

30.     iHealthcare then offered Lifebrite an opportunity to cure by entering into a Global License Agreement for our software and intellectual property and any and all derivatives that may have been produced, as an amicable way to resolve the matter and not compromise Lifebrite's operations. *See* Exhibit "19" [Global License Agreement Outreach to Lifebrite]

31.     Lifebrite notified iHealthcare that this was a matter to be resolved between Empower and iHealthcare and disputed and rejected our claim to ownership of the software, source code and intellectual property.  *See* Exhibit "20" [Lifebrite refusal to open discussions]

32.     Lifebrite's rejection of iHealthcare's ownership and refusal to negotiate a license agreement left iHealthcare with no other option then to issue a Cease-and-Desist Notice to Lifebrite and its CEO, Christian Fletcher.  *See* Exhibit "21" [Cease & Desist to Lifebrite]

33.     Failure to cure by Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez, Empower Holdings Group, LLC, Empower HIS, LLC, Perez-Tio Family Trust, Empower Capital Management, Empower Capital Group, Mas Lab, and all other unknown entities involved in the scheme at that time, left iHealthcare with no other option then to issue a Cease-and-Desist Notice. *See* Exhibit "22" [Cease & Desist to Perez Family, Empower, Mas Lab]

34.     Lifebrite's, Empower's and Mas Lab's failure to cure and Cease and Desist forced iHealthcare to issue a formal Notice of Civil Theft under Section 772 of the Florida Statute to each of the Parties.

35.     During this process, Lifebrite's CEO, Christian Fletcher, stated that they were no

longer interested in acquiring the Empower HIS and Mas Lab software and were developing their own software.  However, in reality we believe Empower HIS and Mas Lab are fraudulently modifying the source code provided to Lifebrite.  This statement by Lifebrite CEO was curious since iHealthcare had learned first-hand from Jorge A. Perez that he had already "*delivered*" to Christian Fletcher the Source Code and Software for Lifebrite to test and start actively using on daily operations at all Lifebrite facilities.  iHealthcare asserts that Empower HIS and Mas Lab was again modifying or rewriting iHealthcare's software, source code and intellectual property for Lifebrite as part of their continuing conspiracy to further defraud iHealthcare and its Shareholders by feigning a new product creation and jointly claiming it was a different product, *even though iHealthcare's Agreement includes all "Derivatives" from acquired Software, Source Codes, and major elements of which had to contain intellectual property acquired by iHealthcare*.

36.     On and about July 31, 2019, through emails pertaining to the iHealthcare Software and Source Code Directory, Jorge A. Perez in written communications to and between iHealthcare executives, confirmed and admitted that the assets acquired by iHealthcare included all software developed by Mas Lab LLC, which was wholly owned by Empower HIS at the time of the iHealthcare IP & IT Asset Purchase Agreement. This communication confirms that the Mas Lab software was not only part of the Assets acquired by iHealthcare, but the Mas Lab software is the same or derivative intellectual property of the iHealthcare Lab Software.  *See* Exhibits "23" [Source Code List by Jorge A. Perez]

37.     Empower's subsequent and continuing failure to transfer the Assets listed in the Agreement [subsequently confirmed by Jorge A. Perez on multiple times, in writing to iHealthcare Executives, Auditors, SEC Law Firm and SEC Filings were owned by iHealthcare] and Lifebrite's rejection of iHealthcare's legitimate proof of ownership, Lifebrite's continuing possession and use of iHealhcare's software, intellectual property and source code despite being advised and offered

proof that these items were owned by iHeathcare, Lifebrite's refusal to negotiate a Global License offered by iHealthcare, and Defendants/Co-conspirators Civil Theft of iHealthcare's software, source code and intellectual property and the presence of a conspiracy to defraud iHealthcare and its' Shareholders has led to this Complaint to the Court for redress.

## CONSPIRACY

38.     Defendants, *Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez, Perez-Tio Family Trust, Empower Holdings Group, Empower Capital Group, Empower Capital Management, Empower HIS, Empower Investment Group, MedX Group, Mas Lab Delaware and Mas Lab Florida, Christian Fletcher, and Lifebrite* (together "Defendants/co-conspirators" and "co-conspirators") have not undertaken the above practices and activities in isolation, but instead have done so as part of a common scheme and conspiracy to defraud iHealthcare and its Shareholders.

39.     Each Defendant and members of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud and extortion to relieve Plaintiffs of their rightful compensation, and actually committed such acts, to the extent that Defendants/co-conspirators actively engaged in the theft and illegal transfer of iHealthcare's intellectual property, software, derivatives, URL ownership, website, corporate emails and Domain as part of the scheme to conceal their tracks and erase evidence of their actions and fraud, with some of these events directly in violation of the Federal Communications Commission (FCC).

40.     Indeed, for the fraudulent schemes described above to be successful, each Defendant and other members of the conspiracy had to agree to enact and utilize the same devices and fraudulent tactics against the Plaintiff. If only one Defendant engaged in these activities, the ownership of the Software and Intellectual Property in the Agreement would not be subject to dispute amongst several person through several intentional transfers of ownership amongst family

members and business associates.  Together, the Defendants/co-conspirators have the power and influence necessary to affect and perpetuate their scheme, including using multiple registered Florida Limited Liability Companies and Corporations as an instrumentality to further their fraudulent scheme to transfer and shield assets, hide ownership of title and defraud iHealthcare and its Shareholders.

41.     Numerous common facts and similar activities, which reflect the above reality and imply the existence of a conspiracy, exist among all of the Defendants and other members of the conspiracy, including but not limited to:

> (a)     Interfering with iHealthcare's intellectual property.
>
> (b)     Converting iHealthcare's intellectual property.
>
> (c)     Civil theft of iHealthcare's intellectual property.
>
> (d)     Clouding title and therefore restraining alienation of iHealthcare's intellectual property though creating a maze of title transfers, limited liability companies as part of their fraudulent scheme.
>
> (e)     Illegal conversion and theft of ownership of URL Domain www.ihealthcaresystems.com from iHealthcare to Jorge A. Perez actuated by Carlos Perez.
>
> (f)     Civil Theft of iHealthcare email system under @ihealthcaresystems.com to destroy email evidence actuated by Carlos Perez.

**Mas Lab, Ricardo J. Perez, Jorge E. Perez, Jorge A. Perez, and Carlos Perez**

42.     It is unknown how or "exactly" when Mas Lab began to interfere with the Agreement fraudulently and tortiously between iHealthcare and E-HG, converted the assets of the Agreement, and therefore stole iHealthcare's intellectual property. However, sometime after the execution of the Agreement, Mas Lab represents it took possession and ownership of the Software from Jorge A. Perez, through E-HG, after iHealthcare contractually took ownership. At no time did Jorge A. Perez through E-HG represent that there were any adverse interests in the purchased

intellectual property subject to the Agreement or otherwise notice iHealthcare it was in breach of the Agreement or a default under the Note.

43.     Further, in ¶5.D. of the Agreement, Empower is required not only to notify iHealthcare in such an occurrence, but to assign all rights and revenues from such an occurrence and then created a duty on Empower to protect iHealthcare's intellectual property through copyrights and patent protections, *to wit*:

> "INVENTIONS AND CREATIONS, <u>Disclosure of Creations</u>. Empower further agrees to (i) disclose promptly to iHealthcare all such Creations which Empower has made or may make solely, jointly, or commonly with others, (ii) assign all such Creations to iHealthcare, and (iii) execute and deliver any and all applications, assignments, or other instruments which Empower may deem necessary in order to enable it, at its expense, to apply for, prosecute, and obtain copyrights, patents or other proprietary rights in the United States and foreign countries or in order to transfer to iHealthcare all right, title, and interest in such Creations.

44.     At no relevant time did Jorge A. Perez through E-HG disclose to iHealthcare that Mas Lab is owned by his brother Defendant Ricardo J. Perez and father Jorge E. Perez. Likewise, at no relevant time did Ricardo J. Perez disclose the familial relationship between these two entities.

45.     Notwithstanding the foregoing, on or about May 2019, iHealthcare was noticed that Mas Lab was claiming ownership of a product called MedX Lab Billing Software, a derivative of iHealthcare's acquired intellectual property, being marketed by Mas Lab, LLC and distributed by Empower HIS, which have the same ownership interest, under the Perez Family. See Mas Lab and Lifebrite Preamble of their Agreement *See* Exhibit "24" [Letter from Law Office of Brown and Associates and APA Preamble]

46.     Equally noteworthy, at all relevant times prior to, and at the time of, executing the Agreement, Mas Lab was not incorporated and did not exist in Florida. Therefore, iHealthcare had no method of foreseeing this occurrence with any reasonable due diligence.

47.     Defendant Jorge A. Perez. through E-HG, orchestrated a fraudulent scheme with his

father Jorge E. Perez and biological brothers and co-conspirators/Defendants Ricardo J. Perez and Carlos Perez, through Mas Lab, to create a web of transfers of the intellectual property own by iHealthcare under Agreement.   *See* the Florida Division of Corporations self-authenticated disclosure under Exhibit 5 previously shown.

48.     This initial transfer between familial entities was the *"first known step"* -- of the several steps -- advanced in this organized scheme to defraud iHealthcare and its Shareholders.

### Lifebrite and Christian Fletcher

49.     The Defendant Jorge A. Perez, through E-HG, and with co-conspirators Defendants Jorge E. Perez, Ricardo J. Perez, and Carlos Perez, through Mas Lab, moved to the *"second step"* of their fraudulent scheme.

50.     While neither Empower or MAS Lab disclosed their intent to iHealthcare to enter into a written Contract with Lifebrite, to sell and support "iHealthcare Lab Software", including the Intellectual Property and Source Code to the software, iHealthcare was informed by Jorge A. Perez that he had turned over the "Source Code" of the "iHealthcare Lab Software" to Lifebrite, in order for Lifebrite to test the software.

51.     On or about April 2019 an unknown person mailed an unsolicited copy of the MAS Lab and Lifebrite APA dated January 18, 2019, which was executed by Jorge A. Perez, to iHealthcare Headquarters.  See Exhibit "25" [Asset Purchase Agreement [APA] between Empower, Mas Lab and Lifebrite]

52.     Further, there is no filing of any sale/purchase agreement between MAS Lab and iHealthcare with the Securities and Exchange Commission (SEC) and MAS Lab was never a Party to the iHealthcare IT & IP Asset Purchase Agreement, which was the acquisition of all Intellectual Property, Source Codes, Derivatives and Software.

53.     Notwithstanding, the "*third step*" of the fraud was confirmed when Lifebrite

represented and validated that a Contract/Agreement with MAS Lab exists and claimed it was the legal owner of iHealthcare's intellectual property.

54.     It is unknown to iHealthcare if MAS Lab and Empower HIS entered into a written contract to sell "iHealthcare Lab Software" to Lifebrite. This fraudulent transaction was not disclosed to iHealthcare by MAS Lab or Empower HIS, which clearly shows that MAS Lab and Empower HIS intended to defraud iHealthcare and its Shareholders by concealing and re-selling the iHealthcare Lab Software and Source Code to a third-party, Lifebrite.  Additionally, it was never disclosed the method that Mas Lab allegedly acquired iHealthcare's Software and Source Code, which is iHealthcare's Intellectual Property and as stated by Jorge A. Perez in the November 29, 2018 IT & IP Asset Transfer Letter to the Auditors of iHealthcare: "*These assets are held in a Software Vault located in Miami, Florida and under the control of iHealthcare, Inc.,*" [emphasis added] as such was being secured and held by Jorge A. Perez under a "Vault" for iHealthcare. Despite these representations that Jorge A. Perez made to iHealthcare Auditors on November 29, 2018, Jorge A. Perez never transferred the "Vault" to iHealthcare, Inc.  *Simply put, iHealthcare never received access or possession of the "Vault" as stated by Jorge A. Perez.*

55.     In-fact, there is no filing of any such sale/purchase agreement(s) with the Securities and Exchange Commission or found in the public records after reasonable diligence. Notwithstanding, Lifebrite has fraudulently represented a contract/agreement with MAS Lab and Empower HIS exists and further represents that Lifebrite is the legal owner of iHealthcare's Intellectual Property. This despite the fact that iHealthcare notified Lifebrite that iHealthcare had previously acquired all the assets, software and source code and intellectual property of Empower HIS and Jorge A. Perez and Ricardo J. Perez.  Lifebrite also knew that its' proposed Asset Purchase Agreement identified Empower HIS as the owner of the lab software and that Ricard J. Perez and Jorge A. Perez were identified in the APA as owners of Mas Lab, MedX and Empower. Once

notified by iHealthcare, Lifebrite knew full well that Empower and Jorge A. Perez and Ricardo J. Perez had sold all their software, source code and intellectual property to iHealthcare, yet they still intentionally chose to participate in the fraudulent scheme to defraud iHealthcare.

56.     For clarity, the systematic and orchestrated scheme at this third step – i.e., the chain of ownership -- is set-forth chronologically:

i.     the iHealthcare Lab Software AND INTELLECTUAL PROPERTY, SOURCE CODE AND ALL DERIVATIVES was first contractually transferred from E-HG to iHealthcare under the IT & IP Asset Purchase Agreement executed May 30, 2018:

ii.     Sometime thereafter, E-HG then transferred ownership of the same iHealthcare Lab Software to Mas Lab, which was located securely in a "*Software Vault*"; and

iii.     Lastly, sometime after Mas Lab acquired the same iHealthcare Lab Software it then CREATED THE PRODUCT NAME MedX Lab Billing Software or a version of it AND transferred ownership to Lifebrite.[1]

57.     Further, Lifebrite and Mas Lab and Empower HIS assert subsequent ownership interests for the derivate property known as "MedX Lab Billing Software". That is, the very party, Empower Holding Group [E-HG], which shares "identical" ownership with Empower HIS and MAS Lab, that also contractually sold the source code, intellectual property, software and derivates [iHealthcare's Lab Software], to iHealthcare – does not now make such ownership claim even though they are the very same parties.  The question then arises as to how MAS Lab and Empower HIS obtained access and ownership to this software, source code and intellectual property after Empower sold it to iHealthcare. Further, since the same owners sold their personal intellectual

---

[1] This *per se* alleged transfer outside the chain of title would be conceptually similar to a wild deed in real estate.

property and derivatives to iHealthcare, how can they now make such an ownership claim as well.

58.     The intent to defraud was confirmed by Jorge A. Perez in a July 31, 2019 communication from Jorge A. Perez to iHealthcare, wherein he acknowledges that the Mas Lab software was, in fact, part of the software included in the original IT and IP Asset Purchase Agreement.  In this communication, Jorge A. Perez confirms: (i) that he did not deliver the listed assets to iHealthcare, as required under the Agreement, (ii) that iHealthcare owns the listed Assets in the Source Code List, and (iii) that the Mas Lab software was included in iHealthcare asset acquisition.

59.     Notwithstanding the familial and lateral business connections between E-HG and Mas Lab (each owned by business partners and biological brothers Jorge A. Perez and Ricardo J. Perez and biological father Jorge E. Perez) there is also a historical and current relationship between Ricardo J. Perez, Jorge A. Perez, and Christian Fletcher outside of this dispute.

60.     For instance, Christian Fletcher is currently alleged to be a criminal conspirator with Jorge A. Perez and his brother Ricardo J. Perez [and others] in a recently unsealed indictment filed the United States District Court Middle District of Florida, Jacksonville Division, Case No. 3:20-cr-86-J-34PDB, on June 29, 2020. *See* Exhibit "26" [Federal Indictment of Jorge A. Perez, Ricardo J. Perez and Christian Fletcher, et al]

61.     In the Federal indictment the Justice Department names [amongst others] Christian Fletcher, Ricardo J. Perez and Jorge A. Perez asserting, *inter alia*, "an elaborate pass-through billing scheme" resulting in *$1.4 billion dollar* in fraudulent billings of private insurers.[2]

---

[2] Jorge A. Perez and Ricardo J. Perez were charged with one count of conspiracy to commit healthcare fraud and wire fraud, five counts of substantive healthcare fraud, one count of conspiracy to commit money laundering, and seven counts of substantive money laundering in the amount of at least $46,286,878.58 which represents proceeds obtained as a result of the commission of the offenses as charged in the indictment. In addition, Christian Fletcher was also charged in the indictment in the amount of at least $75,972,061.86 which represents proceeds Christian Fletcher obtained as a result of the commission of the offenses as charged in the indictment.

62.     In ¶ 13.g. of the indictment it is alleged that, "The sum of at least $75,972,061.86 which represents proceeds defendant CHRISTIAN FLETCHER obtained as a result of the commission of the offenses charged in Count One, and which proceeds were involved in the commission of the offenses charged in Counts Eight, Fifteen and Eighteen."

63.     Defendant/co-conspirator Christian Fletcher, through Lifebrite, has similarly participated in a fraudulent source code, software scheme with E-HG, Mas Lab, Jorge A. Perez, and Ricardo J. Perez to materially damage and defraud iHealthcare and its Shareholders.

64.     In furtherance of their scheme, on October 31, 2019, Jorge E. Perez and Ricardo J. Perez through Mas Lab filed a complaint against iHealthcare claiming ownership of the Software subject to the Agreement between E-HG and iHealthcare. *See* Exhibit "27" [Mas Lab 11th Circuit Complaint against iHealthcare]

**Defendant/Co-Conspirator Jorge E. Perez.**

65.     The mastermind behind the scheme to defraud iHealthcare is Jorge E. Perez, who as the family patriarch and father to Jorge A. Perez, Ricardo J. Perez, and Carlos Perez, has over fifty (50) years in healthcare business experience and has created many business entities in the healthcare space.  Jorge E. Perez was involved in every decision process that entailed iHealthcare and the IT & IP Asset Purchase Agreement, directing his sons to engage with iHealthcare at every level, and to ensure that iHealthcare would not obtain the Assets that it had acquired under the Agreement. Jorge E. Perez attended several meetings in Empower's Miami Office with iHealthcare executives and requested that iHealthcare make numerous revisions to the Agreement, over a period of time, slowing the process.

66.     Jorge A. Perez represented to iHealthcare that his father, Jorge E. Perez, has to be comfortable with the Agreement before he could execute on behalf of the family. It made clear that the Perez Family knew full well they were selling their entire software suite and personal intellectual

property, source codes, derivatives, and software to iHealthcare, which is clearly reason they demanded a board seat on iHealthcare designated by the family.  As required by the IT and IP Asset Purchase Agreement, the Perez Family named Jorge A. Perez to serve on iHealthcare's Board of Directors. He was then appointed to the Board by unanimous consent of iHealthcare's Board of Directors on May 31, 2018.  Jorge A Perez then resigned from the Board *"for strictly personal reasons"* on January 31, 2019. He acknowledges in his letter of resignation that the Perez Family was entitled to select a new candidate to fill his vacancy and that the Perez Family would later nominate someone else to serve on their behalf.  *See* Exhibit "28" [Board of Directors Appointment Minutes and Letter of Resignation of Jorge A. Perez]

67.     On occasions, Jorge E. Perez, and Jorge A. Perez verbally requested that iHealthcare to employ family members including Jorge A. Perez as its' Chief Innovation Officer, to continue to develop software products for iHealthcare.

68.     Meanwhile, the Perez Family schemed to delay the transfer of the IT & IP Asset Purchase infrastructure, which included the Source Code Software Vault (VAULT) maintained at a server co-location facility in Miami.  Only when MAS Lab, LLC noticed iHealthcare with a Cease-and-Desist Letter, did it become apparent to iHealthcare the reason that the Perez Family continued moving the proverbial "goal posts" and making excuses as to why the Source Codes, Software and other items in the Agreement had not been made available, completed, or even started per the Agreement and Title Transfer.

69.     The Perez Family in their scheme were/are defrauding iHealthcare and its Shareholders by double-selling assets that were legally/contractually acquired by iHealthcare to Lifebrite. Meanwhile, they were modifying existing Source Code to develop a competing lab product at MAS Lab, LLC under the direction of Jorge E. Perez, MAS Lab, LLC Managing Partner.

70.     iHealthcare was never provide access to the software vault.  Jorge E. Perez, Jorge A.

Perez, Ricardo J. Perez, Carlos Perez, Empower, *et al* conspired to damage the business of iHealthcare and conceal their scheme to commit fraud, conspiracy to illegally transfer assets, wire fraud and support for iHealthcare's claims for Intellectual Property.

71.     iHealthcare provided Empower administrative access to our systems for acceptable business reasons in light of the fact the parties were in the process of assuming management control of specific hospital contracts. Instead, Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez, and Empower fraudulently transferred ownership of the iHealthcare Domain, URL, Website, and corporate email system under www.ihealthcaresystems.com to conceal the fraudulent scheme, evidence thereof, and damage iHealthcare as a going concern. *See* Exhibit "29" [Theft of www.ihealthcaresystems.com Website, URL, Corporate Emails, ICCAN]

72.     Jorge E. Perez was controlling this conspiracy behind the scenes. In the interim, sometime in December 2018, without the knowledge, consent, or approval of iHealthcare, Carlos Perez assumed control of the iHealthcare proprietary website, email domain, URL for the intended purposes of incapacitating and fostering the fraudulent scheme to destroy and/or conceal evidence.

73.     iHealthcare learned in April 2019 that iHealthcare corporate emails, Domain and URL of www.ihealthcaresystems.com had been compromised and shut down and iHealthcare could not access any of iHealthcare's email accounts.  On April 17, 2019 at approximately 4:30 PM, Jorge A. Perez contacted the CEO of iHealthcare stating that if iHealthcare did not remit $60,000 to the Perez Family, then the Corporate Website, Domain and Emails would be removed from public access and deleted.  Cleary another effect to further their scheme through threats.

**Defendant/Co-Conspirator Carlos Perez**

74.     On or about April 17, 2019 the iHealthcare URL, Domain and company Email systems were all compromised and the Website www.ihealthcaresystems.com was removed from online access.  All company emails @ihealthcaresystems.com were removed and access denied to

authorized users. The entire iHealthcare Domain Systems and Emails had been removed and hijacked.

75.     The CEO of iHealthcare received a call from Jorge A. Perez demanding that if iHealthcare did not make a payment of $60,000 and threated to deny access to the Domain, Website, and company Emails.  This was the beginning of the fraudulent coercion by the Perez Family, at a time when they were losing access to funding thirteen (13) of their hospitals that had fallen into Receivership and or Bankruptcy.  *See* Exhibit "30" [News Articles]

76.     Carlos Perez organized the "take-down" of iHealthcare Systems, with the support of Jorge E. Perez, Jorge A. Perez, and Ricardo J. Perez.  iHealthcare notified all parties that this was a direct violation of Federal Communications Commission law and a fraudulent and likely criminal act.

77.     To date, the Perez Family has refused to release the iHealthcare Systems URL, Domain and Emails, which iHealthcare maintains it was affected to destroy evidence.

**Breach of the IP & IT Asset Purchase Agreement**

78.     According to the Agreement ¶ 5.A, Empower represented that, *inter alia*, "Any and all inventions, discoveries, improvements, creations, software, source codes, updates, upgrades, derivative works, hardware, data base rights, processes, licenses, concepts, techniques, trade secrets, know how, discoveries, works or ideas (collectively "Creations") whether or not patentable or copyrightable which Empower has conceived or made or may conceive or make during the relationship with the each other, and/or in any way, directly or indirectly, connected with this Agreement, shall be Assigned and Transferred under each Acquisition and be made the sole and exclusive property of iHealthcare in this Asset Purchase Agreement …".

79.     Further, Section 1 of the Agreement stipulates that "iHealthcare agrees to acquire…all intellectual property [IP] of Jorge Perez and Ricardo Perez."

80.     Further, this would include all "derivative works," and "Creations" as stipulated above.

81.     And would include any derivative of the software named in the Agreement, including: "Exhibit [A]: Empower LIS PHP Lab Information System and Empower LIS Physician Portal Lab Information System Physician Portal; and in Exhibit [B]:  Item a:  Proprietary Hospital and Lab Billing Systems; Item b: Proprietary Lab Management and Lab Information Systems integrated with the recently acquired Medical Applied Solution (MAS) Source Code; Item 5. Empower Lab Management – back office management system, including billing for client and insurance plans, etc. -Interfaced to LIS; Item 20. Empower LIS Assignment of Empower rights to sell LIS to iHealthcare customers; Interface to LIS Technologies. LIS is a third-party licensed product." Taken together, these products represent a portion of the software and intellectual property acquired by iHealthcare that was either renamed, copied, stolen, converted or developed as a derivative product named Medx Lab Billing System to which iHealthcare asserts its' intellectual property rights and ownership.  Especially given that the same owners of Empower Entities are the same owners of Mas Lab, LLC, are also the same owners who are individually listed as having also sold their personal intellectual property to Healthcare in Section [1] and Section [5] of the Agreement.

82.     Further, Jorge A. Perez and Ricardo J. Perez breached their duty to disclose the MedX Lab Billing software as a commercial product, assign right to the software and revenues derived from it, and perpetrated a fraud on iHealthcare and its Shareholders by selling this product in the marketplace and failing to protect iHealthcare IP Rights as required in Section 5 d of the Agreement.  MedX Lab Billing software was wholly owned by Empower HIS "which sold ALL its Assets to iHealthcare under the Agreement dated May 30, 2018", also supported by the preamble from the MAS Lab and Empower HIS secret agreement with Lifebrite, in addition to the letter

received from Lifebrite legal counsel, which also confirms this Statement of Fact. The Defendants/co-conspirators, and Lifebrite identified themselves as owners of the entities and iHealthcare's Lab Software and Intellectual Property as stated in the preamble and Schedule [4] of the APA Agreement negotiated by and between Mas Lab, Empower HIS and Lifebrite. The Defendants/Co-conspirators knew full well the claims, intentions and owners of all the parties.

83.     In addition, any Lab Management System, Lab Information system and/or Lab Billing system stolen or reproduced or converted or recreated or derived from iHealthcare's intellectual property includes the MedX Lab Billing System created or renamed by Mas Lab and sold to Lifebrite as the principals of Mas Lab LLC are the same Jorge E. Perez (Father) and Ricardo J. Perez (brother) who owned Empower. However, Section 5 Item c of the Agreement stipulates that the software and intellectual property sold to iHealthcare was "free and clear of any third-party claims of ownership, royalty, rights, license, or other encumbrances or compensation and are conveyed free and clear of any restrictions."

84.     Further, in ¶ 5.d., Empower and Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez and Carlos Perez had a duty "to (i) disclose promptly to iHealthcare all such Creations which Empower has made or may make solely, jointly or commonly with others, (ii) assign all Creations to iHealthcare, and (iii) execute and deliver any and all applications, assignments, or other instruments which Empower may deem necessary in order to enable it, at its' expense, to apply for, prosecute and obtain copyrights, patents or other proprietary rights in the United States and foreign countries or in order to transfer to iHealthcare all right and title and interest on such Creations." This duty was breached when they created and marketed for sale the MedX Lab Billing Software at Mas Lab and Empower HIS, and failed to disclose it in an overt attempt to defraud iHealthcare and its Shareholders.

85.     Therefore, even when they created or converted or reproduced the "MedX Lab

Billing System" under Mas Lab LLC, they had a fiduciary duty to promptly disclose this to iHealthcare and assign that same creation and all its' rights to iHealthcare and its' benefits. The duty was not only that of Empower, but of Jorge A.  Perez and Ricardo J. Perez as well, having personally sold their personal intellectual property to iHealthcare as well in Section [1] and [5] of the Agreement. Instead of complying with these and other provisions of the Agreement, they filed a Florida state court complaint against iHealthcare, falsely alleging interference *et al* with their fraudulent agreement with Lifebrite. This proactive lawsuit against iHealthcare is clearly an effort to further conceal their fraud – that is, as experienced in the litigation/lawsuit forum considering the serious legal disputes against them currently pending in State and Federal courts.  What is noticeable and of importance, neither MAS Lab or Empower HIS have filed a complaint against Lifebrite.   As of this date, all three entities; MAS Lab, Empower HIS and Lifebrite retain possession of iHealthcare intellectual property.

86.     These actions were taken despite the fact that Jorge A. Perez confirms in a July 31, 2019 communication and attached "Source Code List" to iHealthcare that the Mas Lab software and intellectual property was part of the Assets, as listed in the IT and IP Asset Purchase Agreement.

87.     Indeed, according to the representations by Lifebrite and Mas Lab it is clear that (E-HG) never intended to transfer full ownership of the IP assets as represented under the terms of the Agreement.  The scheme was clearly to defraud iHealthcare and its Shareholders.

88.     In addition, in ¶5.A of the Agreement it continues " … Empower further irrevocably waives and assigns any claims for royalties, compensation, commission, revenue or other benefits from the creations that may inure Empower to iHealthcare Inc.".  On the same basis as above, the Perez Family through E-HG breached this provision.

89.      Representing the clear title would be delivered, under ¶5.C of the Agreement,

"Empower further warrants that the Creations were developed as "work for hire" are *free and clear of any third-party claims to ownership, royalty, rights, license or other encumbrances or compensation and are conveyed free and clear of restrictions*. (emphasis added) the Perez Family through E-HG breached this provision understanding that Lifebrite and Mas Lab have made adverse ownership legal claims to the assets subject to the Agreement that iHealthcare owns.

90.     Pursuant to ¶8.f. of the Agreement "Neither this Agreement nor any interest herein may be assigned in whole or in part by any Party hereto without the prior written consent of all other Parties."  Here, the representations that are three (3) known transfers of ownership of the Software between E-HG, Mas Lab and Lifebrite, the Perez Family through E-HG breached this provision and in doing so further advanced the scheme to defraud iHealthcare and its Shareholders.

91.     In the event the Agreement is terminated, paragraph 2-11 of the Agreement will survive through the integration clause found in ¶8.C.,

> "This Agreement contains the complete understanding between the Parties and shall as of the date hereof, supersede all other agreements, whether they are written or oral, between the Parties concerning the particular subject matter. Paragraphs 2 through 11 constitute a binding contract and will continue in full force and effect surviving the termination of this Agreement."

92.     In the event of a breach of the Agreement or otherwise legal dispute, in paragraph 8.h, of the Agreement the parties agree to injunctive relief, *inter alia*, "… either Party may obtain from any court of competent jurisdiction a preliminary, temporary, or permanent injunction, restraining or enjoining such violation by the other Party or any entity or person acting in concert with that Party."

93.     Pursuant to ¶8.g. "The terms and existence of this Agreement are confidential, and neither the contents nor its details of the Agreement may be shown or disclosed by either Party, except to those individuals with who have a need to know as a result of being involved in or related to this Agreement.  Through the representations made by Lifebrite and Mas Lab, the Perez Family

through E-HG breached this confidentiality provision.

94.     According to paragraph 6 of the Agreement, in pertinent part, "… the Parties acknowledges and agrees that they each are entitled to a *Covenant Not To Compete* and such restraint is reasonably necessary to protect the legitimate business interest or interests of the Parties, to the extent that there is an Ongoing Entity." (emphasis added)

95.      Here, when Jorge A. Perez through E-HG employed the assist of conspirators Christian Fletcher and his brother Ricardo J. Perez, Carlos Perez and father, Jorge E. Perez to perform their scheme against iHealthcare, this provision was breached and wholly disregarded.

96.     Pursuant to 8.b of the Agreement, "This Agreement contains the complete understanding between the Parties and shall as of the date hereof, supersede all other agreements, whether they are written or oral, between the Parties concerning the particular subject matter. Paragraphs 2 through 11 constitute a binding contract and will continue in full force and effect surviving the termination of this Agreement."  This provision was breached by the Perez Family through E-HG when it transferred the same intellectual property to his father Jorge E. Perez and brother Ricardo J. Perez, through Mas Lab, and then to Christian Fletcher through Lifebrite.  In addition, the breach continues because the parties agreed, in part, it is "a binding contract and will continue in full force and *effect surviving the termination of this Agreement*."

## RICO ALLEGATIONS

97.     Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3). 115. Based upon Plaintiffs' current knowledge, the following persons constitute a union or group of individuals associated in fact that they have been involved in other criminal activity actually relating to fraud as described below.

98.     The Defendants and co-conspirators are an ongoing organization which engages in, and whose activities affect, interstate commerce.

99.     While the Defendants and co-conspirators participate in and are members and part of the same enterprise, they also have an existence separate and distinct from the enterprise.

100.    In order to successfully retain the intellectual property owned by iHealthcare in the manner set forth above, Defendants and co-conspirators created a system that allows them to manipulate and control the title traction thereby closing title/alienation through creating an instance of dispute ownership of the intellectual property owned by iHealthcare and conceal the manner in which that is done.

101.    Predicate Acts 120. Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). As set forth below, Defendants have and continue to engage in conduct violating each of these laws to effectuate their scheme.

102.    In addition, in order to make their scheme effective, each of the Defendants sought to and did aid and abet the others' in violating the above laws within the meaning of 18 U.S.C. 29 §2. As a result, their conduct is indictable under 18 U.S.C. §§ 1341 and 1343 on this additional basis. Violations of 18 U.S.C. §§ 1341 and 1343 122. For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants and co-conspirators, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to agreements, manuals, correspondence, payments, reports, data, and wire transfers.

103.    For the purpose of executing and/or attempting to execute the above-described scheme to defraud or obtain money by means of false pretenses, representations or promises, the

Defendants and co-conspirators, also in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things which include but are not limited to agreements, manuals, correspondence, payments, reports, data, and wire transfers.

104.    The matter and things sent by Defendants and co-conspirators via the Postal Service, commercial carrier, wire, or other interstate electronic media include, inter alia: a) material containing false and fraudulent misrepresentations that Defendants relating to ownership of the Software owned by iHealthcare and attempting to use and/or sell the same intellectual property to other third parties.

105.    Other matter and things sent through or received from the Postal Service, commercial carrier or interstate wire transmission by Defendants and co-conspirators included information or communications in furtherance of or necessary to effectuate the scheme.

106.    The Defendants and co-conspirators misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs Shareholders and the class and obtaining their property for the Defendants' gain.

107.    The Defendants and co-conspirators either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and Plaintiff relied on the misrepresentations and omissions as set forth above.

108.    As a result, Defendants and co-conspirators have obtained money and property belonging to the Plaintiff, and Plaintiff has been injured in their business or property by the Defendants and co-conspirators overt acts of mail and wire fraud, and by their aiding and abetting each other's acts of mail and wire fraud.

**Pattern of Racketeering Activity**

109.    The Defendants and co-conspirators have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5), by committing or aiding and abetting in the

commission of at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§ 1341 and 1343 as described above, within the past ten years. In fact, each of the Defendants and co-conspirators has committed or aided and abetted in the commission of multiple acts of racketeering activity. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had equivalent results, and impacted similar victims, including Plaintiff.

110.    The multiple acts of racketeering activity which Defendants and co-conspirators committed and/or conspired to or aided and abetted in the commission of, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. ' 1961(5).

111.    RICO VIOLATIONS § 1962(a) 132. Section 1962(a) of RICO provides that "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity … in which such person has participated as a principal within the meaning of ' 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

112.    As set forth above, Defendants and co-conspirators receive income from their participation as principals in an extensive pattern of racketeering activity through the use of multiple linked Limited Liability Companies.

113.    That income is reinvested to finance future racketeering activity, and the future operation in the health care software industry. In addition, Defendants and co-conspirators use the income to buy additional healthcare industry software for several alter ego companies or plans, which increases the scope and size of the fraud, then reach of their fraudulent scheme, and their

power to perpetuate and enforce it.

## § 1962(c)

114.    Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise=s affairs through a pattern of racketeering activity …."

115.    Through the patterns of racketeering activities outlined above, the Defendants and co-conspirators have also conducted and participated in concert makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c), of this section.

116.    Defendants and co-conspirators conspiracy to secure money due the Plaintiff for their own use through the fraudulent and extortionate scheme described above violates 18 U.S.C. §1962(d).

117.    Each of the Defendants and co-conspirators agreed to participate, directly or indirectly, with each other through a pattern of racketeering activity comprised of numerous acts of mail fraud, wire fraud and extortion, and each Defendant and co-conspirators so participated in violation of 18 U.S.C. § 1962(c).

118.    Each Defendant and co-conspirators further agreed to use or invest, directly or indirectly, part of the income derived from their acts of mail fraud, wire fraud and extortion, which constituted a pattern of racketeering activity, in the establishment, operation, and has done so in violation of 18 U.S.C. § 1962(a).

## 1962(d)

119.    Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c), of this section.

120.    Defendants and co-conspirators conspiracy to secure money due the Plaintiff for

their own use through the fraudulent and extortionate scheme described above violates 18 U.S.C. §1962(d).

121.    Each of the Defendants and co-conspirators agreed to participate, directly or indirectly, through a pattern of racketeering activity comprised of numerous acts of mail fraud, wire fraud and extortion, and each Defendant so participated in violation of 18 U.S.C. § 1962(c).

122.    Each Defendant and co-conspirators further agreed to use or invest, directly or indirectly, part of the income derived from their acts of mail fraud, wire fraud and extortion, which constituted a pattern of racketeering activity, and has done so in violation of 18 U.S.C. § 1962(a).

## Damages

123.    Empower and their developers in India [Nagata Technologies, Kumar Senthil] "which were part of the iHealthcare Agreement" represented to iHealthcare that the "Electronic Health Records" [HER] was ready for formal licensing under Meaningful Use Stage III by the Center for Medicare and Medicaid Services [CMS], which is required before the product could be deployed. They had completed the 25 steps of self-certification and were ready for evaluation as of Spring of 2018. Empower and iHealthcare agreed to commence deployment in September 2018 to ten rural Hospitals by CAH Acquisition Company, which was owned and controlled by Jorge A. Perez and Ricardo J. Perez. There was an urgency as the hospitals were facing a Medicare imposed deadline to implement a certified EHR or face loss of Medicare revenue. iHealthcare drafted ten-year contracts for the CAH Acquisitions Company hospitals to be executed by Jorge A. Perez as Chairman of the Hospital Managing Body, for each hospital, establishing a discounted monthly fee for the software.

124.    iHealthcare EHR revenue projected losses are $10,000 per hospital x 10 = $120,000 per month x 120 months = $14,400,000

125.    Market Loss:  The EHR product was priced to be affordable to rural hospitals which

otherwise were spending over $500,000 to $1 million up front per hospital for a licensed product, plus support and implementation fees. Most rural hospitals could not afford this. In the United States, there are approximately 2, 800 Rural Hospitals as classified by the Centers for Medicare and Medicaid Services (CMS). iHealthcare planned to implement a minimum of 12 hospitals per year beginning in the second year which targeted 60 hospitals over the next 5 years with a 5-year value of: $10,000 x 60 x 60 months = $36,000,000. While this plan represents only a modest 3% market penetration over 5 years, the value proposition could have driven market acceptance much higher.

126.    Support Services Loss: iHealthcare signed contracts for Support Services for the ten hospitals at $2,500 per month to offset costs of the IT infrastructure setting a value for these services. The support was not engaged as the IT infrastructure has not been transferred as agreed. Value: $2,500 x 10 hospitals for ten years = $3,000,000   Market loss of 60 hospitals x $2,500 x 60 months = $9,000,000.

127.    Hospital Information System [HIS Product] Loss:    The Hospital Information System was a planned up sell to the installed base, beginning in the second year. iHealthcare valued this product at $3,000 per hospital. $3,000 x 70 hospitals x 120 months = $25,200,000

128.    Implementation Fees Loss: To install the software requires training and some on-site IT work. iHealthcare planned an estimated charge of $50,000 per site for the EHR and $20,000 per site for the HIS. Lost implementation revenue was EHR 70 x $50,000 = $3.500,000 and HIS 70 x $20,000 = $1,400,000

129.    Loss of RCM Fees at 6%:  The EHR comes with a hospital billing service and software. At the time, the 10 hospital net revenues were estimated to be $120,000,000. iHealthcare would charge a below market fee of 6% of net revenues to perform billing services under a 10-year agreement. Conservatively, this would have meant 6% x 120,000,000 x 10 years = $72,000,000.

The market loss would be $10,000,000 average annual net revenue per hospital x 6% x 60 hospitals x 5 years = $180,000,000.

130.    Loss of Programming Teams and Institutional Memory:  The delay is turning over the software and infrastructure has also resulted in the loss of the programmers and coding memory associated with all of the products. These products must now be reassessed for commercial suitability, status of documentation, testing and functionality. To reconstitute new development teams, assess the software, orient developers, and update the code would cost over $3,000,000.

131.    Obsolescence: During the two plus years the software has been idle, the market and competitors continue to advance. There is no assurance that iHealthcare could penetrate the market with the products as designed and would require a plan for a $2 million reserve to improve and upgrade features and functionality.

132.    Valuation compromise:  iHealthcare shareholders suffered a loss of value as a result of the loss of revenue. Software values for comparable recurring revenue products range from 3x to 8x revenue.

133.    The gross actual damages to date, excluding costs, fees, taxation, the like equals: $269,000,000.00.

134.    Based on the representations and inducements made by Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez, Empower entities and the scope and complexity of the acquisition, iHealthcare dedicated significant resources and efforts to operationalizing the software suite and implementation of business development. Time was of the essence for the roll-out of the Electronic Health Records [EHR] not only to meet hospital client needs, but to generate revenues for iHealthcare to fund operations, obtain growth capital, leveraging assets and making the promissory note payments on schedule.  The actions of the Defendants/Co-conspirators, delaying tactics, failure to transfer the assets and their fraud scheme damaged iHealthcare's ability to operate,

raise capital and generate revenues.

## Count I – Breach of Contract

*Against Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez,*
*Carlos Perez, Empower Entities*

135.    The above Plaintiffs incorporates and realleges paragraphs 1 - 134 above as if fully set forth herein

136.    The Agreement between iHealthcare and E-HG for the transfer of the Software and Intellectual Property in reliance upon Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez through E-HG represents that no other party will claim title to the intellectual property *et al.*

137.    Nevertheless, as outlined above, Jorge A. Perez through E-HG transferred title to his father Jorge E. Perez and brother Ricardo J. Perez entity, Mas Lab, and then, Mas Lab transferred the Software under the Agreement to Christian Fletcher through Lifebrite.

138.    The specific provisions of the Agreement are referenced and described above and incorporated into this Count.

139.    The Plaintiff is damaged no less than $4,950,000.00 by these breaches upon transfer of its Software and Florida State lawsuit filed by Mas Lab against iHealthcare claim damages. These breaches are also repetitive and continuing.

140.    The Plaintiff has no adequate remedy at law to future breaches and will suffer irreparable harm.

## Count II – Fraudulent Inducement

*Against Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez,*
*Carlos Perez and Empower Entities*

141.    The Plaintiff realleges and incorporates herein the allegations in paragraphs 1 - 134 as though fully set forth herein.

142.    Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, and Carlos Perez made false

statements regarding a material fact relating to the Agreement. At the time iHealthcare and E-HG entered into the Agreement, Perez held himself out to iHealthcare as the owner of certain intellectual property rights that are itemized in the Agreement including the Software, Source Code, Intellectual Property, and Creations.

143.    Of these statements, prior to, and leading, to the execution of the Agreement Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, and Carlos Perez induced Noel Mijares, the CEO and President of iHealthcare, to reasonably rely upon representations made in the Agreement were true when they were intentionally false.  These false representations were presented to the Board of Directors and Shareholders of iHealthcare for approval to enter into the Agreement.

144.    Empower and Perez Family never advised/noticed iHealthcare before or after executing the IT and IP Asset Purchase Agreement that they intended to incorporate Mas Lab LLC for the purpose of using the same lab software and intellectual property to compete with iHealthcare and/or market and sell a lab billing system and its source code as they later did with Lifebrite.

145.    In fact, prior to executing the Agreement that made iHealthcare and its Shareholders reasonably believe Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez and Carlos Perez were selling all of the software and intellectual property, source codes, assorted lab products, assorted billing products, and all of their personal intellectual property as well, as cited in Item [1] of the Agreement.

146.    Additionally, Jorge A. Perez perpetuated this fraud by signing consents to file notice of the software exhibits acquisition with the SEC and by further filing a software title transfer five (5) months later directly with iHealthcare's independent auditors. In-fact, one of these representations are found in a string of text messages that iHealthcare relied upon prior to execution of the Agreement and attached thereto.  *See* Exhibit "31" [Authenticated Text Message]

147.    Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez and E-HG knew, or

should have known, that the statements and representations relating to its ownership of those certain intellectual property rights, including the Software, Source Code, and Intellectual Property listed in the Agreement were false at the time it entered into the Agreement because co-conspirator Jorge E. Perez and Ricardo J. Perez, through Mas Lab, and co-conspirator Christian Fletcher, through Lifebrite, are both claiming to be-title owners of iHealthcare assets.

148.   Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez through E-HG, made the false statements and representations to iHealthcare with the intent to induce iHealthcare to enter into the Agreement and reap substantial, unjustified fees and other benefits, including 500,000 shares, a seat at the Board of Directors and further compensation.

149.   iHealthcare suffered damages acting in reliance on Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez and Carlos Perez through E-HG false statements and representations.

## Count III – Fraudulent Misrepresentation

### *Against Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez and Empower Entities*

150.   Plaintiff realleges and incorporates herein the allegations in paragraphs 1 – 134 as though fully set forth herein.

151.   Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez through E-HG made a false statement regarding a material fact relating to the Agreement. At the time Jorge A. Perez through E-HG and iHealthcare entered into the Agreement.  Jorge A. Perez through E-HG held himself out to iHealthcare as the owner of certain intellectual property, including the Software, Source Code, and Intellectual Property.

152.   Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez through E-HG knew, or should have known, that the statements and representations relating to its ownership of those certain intellectual property rights, including the Software, were false at the time it entered into the

Agreement because co-conspirator Jorge E. Perez and Ricardo J. Perez through Mas Lab, and co-conspirator Christian Fletcher, through Lifebrite, are both claiming to be the owners.

153.    Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez through E-HG made the false statements and representations to iHealthcare with the intent to induce iHealthcare to enter into the Agreement and reap substantial, unjustified fees and other benefits, including 500,000 shares of company stock.

154.    iHealthcare suffered damages acting in reliance on Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez through E-HG made false statements and representations.

## <u>Count IV -- Tortious Inference with Contractual Relations</u>

### *Defendant/Co-conspirators Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez, Empower, Mas Lab, Christian Fletcher, Lifebrite*

155.    iHealthcare realleges and incorporates herein the allegations in paragraphs 1 – 134 as though fully set forth herein.

156.    The co-conspirators have intentionally and unjustifiably interfered with these relationships by, *inter alia*, through purposefully purchasing the intellectual property subject to the Agreement from Jorge A. Perez through E-HG when they knew or should have known it was owned by iHealthcare.  The Software under the Agreement was purposefully and tortiously made subject to a legal dispute through placing its title and ownership rights into question, to *wit:*

> A.     Defendant/Co-conspirator Jorge E. Perez (Jorge A. Perez Father) and Ricardo J. Perez (Jorge A. Perez Brother) filed a lawsuit against iHealthcare in Miami-Dade Circuit Court to dispute title and alleging ownership of the intellectual property purchased by iHealthcare in the Agreement.

> B.     Defendants Christian Fletcher through Lifebrite asserting ownership rights and title of the Software under the Agreement owned by iHealthcare was allegedly

sold from Defendants Jorge E. Perez, Jorge A. Perez, and Ricardo J. Perez through Mas Lab to Christian Fletcher through Lifebrite.

C.      Defendants Christian Fletcher through Lifebrite took possession of the iHealthcare Lab Billing Software, Source Code and Intellectual Property.

157.    iHealthcare's business relationships, sources and projected revenue streams have been materially damaged by the fraudulent actions of the Defendants/Co-Conspirators:

158.    iHealthcare has suffered damages from the Defendants / Co-conspirators intentional and unjustified interference with iHealthcare's business relationships.

159.    The Plaintiff is damaged no less than $4,950,000.00 by these breaches upon transfer of its Software and Florida State lawsuit filed by Mas Lab against iHealthcare claim damages. These breaches are also repetitive and continuing

## Count V – Conversion

### *All Defendants / Co-Conspirators*

160.    iHealthcare reallege Paragraphs 1 through 134 as if fully set forth herein.

161.    The Plaintiff had clear, legal ownership or right to possession of the Software, Source Code, Derivatives, Intellectual Property under the Agreement.

162.    The Defendants/Co-Conspirators interference has deprived the Plaintiff of possession, use and title to its intellectual property and damaged business development.

163.    As a direct result of the conversion, the Plaintiff has been damaged.

164.    Plaintiff demands judgment and compensatory damages against the Defendants/Co-Conspirators plus costs, interest, and all other relief this Court deems just and proper.

## Count VI - Civil Theft

### *All Defendants and Co-Conspirators*

165.    Plaintiff adopts and re-alleges paragraphs 1 – 134 as set forth herein.

47

166. This is an action for civil theft pursuant to Fla. Stat. §772.11. 47.

167. Defendant/Co-conspirators have obtained Plaintiff's intellectual property subject to the Agreement without Plaintiff's permission.

168. All co-conspirators were served with the pre-suit letter mandated under Fla. Stat. §772.

169. Defendants/Co-conspirators did unlawfully and knowingly use or endeavor to use Plaintiff's Intellectual Property, Software and Source Code and did knowingly deprive or endeavor to deprive Plaintiff of its Intellectual Property, Software and Source Code with the intent to temporarily or permanently deprive Plaintiff of its right to the Intellectual Property, Software, Source Code and benefit thereof, all for Defendants/co-conspirators own use, or the use of any person not entitled thereto, in violation of Florida Statute §812.014

170. Fla. Stat. §812.014 provides, (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit from the property.

171. Pursuant to Florida Statute §772.11, Plaintiff made a final written statutory demand and served said demand on Jorge E. Perez, Jorge A. Perez, Carlos Perez, and Ricardo J. Perez on October 2, 2019 at 9:18 PM via email and via USPS Certified Mail. *See* Exhibit "32" [Civil Theft Notice Perez Family]

172. Pursuant to Florida Statute §772.11, Plaintiff made a final written statutory demand and served said demand on Empower Holdings Group, LLC, and Ricardo J. Perez on October 2, 2019 at 9:24 PM via email and via USPS Certified Mail. *See* Exhibit "33" [Civil Theft Notice Empower]

173. Pursuant to Florida Statute §772.11, Plaintiff made a final written statutory demand

and served said demand on Lifebrite and Christian Fletcher on October 2, 2019 at 9:30 PM via email and via USPS Certified Mail. *See* Exhibit "34" [Civil Theft Notice Lifebrite]

174.    Defendants/co-conspirators have failed to return Plaintiff's Intellectual Property, Software, Source Code and have failed to compensate Plaintiff from the revenues generated.

175.    As a direct and proximate cause of Defendants/co-conspirators unlawful actions, Plaintiff was and continues to be deprived of its right to its property and the benefit therefrom and has suffered damages in the minimum amount of $1,650,000.00.

176.    Pursuant to Florida Statute §772.11, Plaintiff is entitled to treble damages in the minimum amount of $4,950,000.00 for the theft of its Intellectual Property, Software, Source Code committed by each Defendant/co-conspirators.

177.    As a direct result of Defendants/co-conspirators depriving Plaintiff of its right to possess and enjoy its Intellectual Property, Software, Source Code, and the benefit therefrom, and Defendants/co-conspirators, continuing failure and *refusal* to return Plaintiff's Intellectual Property, Software, Source Code, Plaintiff was required to retain counsel and is obligated to pay its counsel a fee. iHealthcare and its Shareholders have been damaged by Defendant's/Co-Conspirators failure to transfer Source Code, Software, Products, and IT Infrastructure.

178.    Plaintiff is entitled to an award of attorneys' fees pursuant to Fla. Stat. §772.11


**<u>Count VII</u>**
**VIOLATION OF 18 U.S.C. § 2 BY SEEKING TO AND AIDING**
**AND ABETTING IN THE VIOLATION OF 18 U.S.C. § 1962(a)**

*All Defendants and Co-conspirators*

179.    Plaintiffs incorporate and reallege the allegation paragraphs 1 and 134 above as if fully set out herein.

180.    This claim arises under 18 U.S.C. § 1964(c).

181.    As set forth above, Defendants and co-conspirators knowingly, and with shared intent, sought to, and have, aided and abetted each of the other Defendants in the commission of predicate acts, in engaging in a pattern of racketeering activity, and in violating of U.S.C. § 1962(a) and (c)

182.    As a result, under 18 U.S.C. § 2, the RICO violations of each Defendant co-conspirator are those of the others as if they had been committed directly by them.

183.    As a direct and proximate result of the fact that each Defendant aided and abetted the others in violating 18 U.S.C. § 1962 (a) and (c), Plaintiff has been injured in their business or property by both the predicate acts which make up the Defendants co-conspirators patterns of racketeering and their investment and reinvestment of income therefrom to operate, expand and perpetuate their fraud together.

184.    Specifically, Plaintiff has been injured in their business or property by the conversion and theft of its Intellectual Property, Software, Source Code and transferred to alter ego companies to cloud title and retrain Plaintiff's alienation.

## Count VIII
### VIOLATIONS OF RICO 18 U.S.C. § 1962(a) AND (c)

*All Defendants and Co-conspirators*

185.    The Plaintiff realleges and incorporates paragraphs 1 and 134 above as if fully set forth herein.

186.    This claim for relief arises under 18 U.S.C. § 1964 (c).

187.    As set forth above, Defendants have violated 18 U.S.C. § 1962 (a) by using and investing income received from a pattern of racketeering, directly or indirectly, to engaged in, and whose activities affect, interstate commerce, and have violated 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the MCE through a pattern of

racketeering.

188.     As a direct and proximate result, Plaintiff has been injured in their business or property by both the predicate acts which make up the Defendants and co-conspirators patterns of racketeering activity and their investment and reinvestment of income therefrom to operate, expand and perpetuate their fraud together

189.     Specifically, Plaintiff has been injured in its business or property by the conversion and theft of its Intellectual Property, Software, Source Code and transferred to alter ego companies to cloud title and retrain Plaintiff's alienation.

### Count IV – Injunctive Relief

*Jorge E. Perez, Jorge A. Perez Ricardo J. Perez,*
*Carlos Perez and all Empower Entities*

190.     iHealthcare realleges and incorporates herein the allegations in paragraphs 1 – 134 as though fully set forth herein.

191.     The actions taken by Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez and through E-HG as alleged above and incorporated herein have caused and will cause iHealthcare irreparable and immediate injury, loss, and damages, for which there is no adequate remedy at law.

192.     iHealthcare has a clear right to the relief sought under applicable law, and therefore a likelihood of success on the merits of this action and interest in the subject matter of this lawsuit.

193.     No adequate remedy at law exists that can fully protect iHealthcare from damages it will suffer if Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez through E-HG is permitted to prevent E-HG from selling the intellectual property subject to the Agreement sold to and owned by iHealthcare.

194.     Alternatively, the Plaintiff seek this Court to enforce ¶8.h. of the Agreement, *to wit*,

"In addition to any remedies under the applicable law, the Parties recognize that any breach or violation of any provision of this Agreement may cause irreparable harm to the other Party, which money damages may not necessarily remedy. Therefore, upon any actual or impending violation of any provision of this Agreement, either Party may obtain from any court of competent jurisdiction a preliminary, temporary or permanent injunction, restraining or enjoining such violation by the other Party or any entity or person acting in concert with that Party."

195.    The balance of equities favors iHealthcare and is in the public interest.

196.    Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez, Empower et al should be required to surrender the full inventory list of products and source codes in Exhibit A and Exhibit B as defined in the IT & IP Asset Purchase Agreement, as further described in the *Source Code List dated July 31, 2019* and all items in good working order, including iHealthcare Lab Software and source codes and infrastructure not transferred to iHealthcare in 2018.  This shall include any and all Derivatives that have been created, modified, altered or reversed-engineered from iHealthcare Source Codes. Because Empower never completed the IT infrastructure transfer, the physical transfer of control of the source codes was never completed, depriving iHealthcare of any ability to generate revenue, as described above in Count IV update the products, market the products, and maintain them in a competitive posture in the marketplace.

197.    Jorge E. Perez, Jorge A. Perez, Ricardo J. Perez, Carlos Perez, Empower, et al should be directed to return the assets and Administrative Control of the stolen iHealthcare website domain [www.ihealthcaresystems.com], URL, emails systems and email archive.

198.    iHealthcare and its Shareholders have been severely damaged by the actions of the Defendants/Co-Conspirators and the relief sought by iHealthcare is necessary to prevent and restrain the ongoing violations of applicable law as described herein.

## **PRAYER FOR RELIEF**

199.    WHEREFORE, the Plaintiff pray that this Honorable Court

200.   AS TO COUNT I - A judgment in favor of Plaintiff for breaching the Agreement, together with attorney's fees, costs, damages including consequential damages, and any other relief this Court finds just and fair;

201.   AS TO COUNTS II AND III – A judgment in favor of Plaintiff for fraudulent inducement and misrepresentation, together with attorney's fees, costs, damages including consequential damages, and any other relief this Court finds just and fair;

202.   AS TO COUNT IV – A judgment in favor of Plaintiff for tortious interference with contractual relations, together with attorney's fees, costs, damages including consequential damages, and any other relief this Court finds just and fair;

203.   AS TO COUNT V – A judgment in favor of Plaintiff for converting the intellectual property under the Agreement, together with attorney's fees, costs, damages including consequential damages, and any other relief this Court finds just and fair;

204.   AS TO COUNT V1 – A judgment in favor of Plaintiff for Civil Theft of the Agreement, together with attorney's fees, costs, damages including treble damages, and any other relief this Court finds just and fair;

205.   AS TO COUNTS VII AND VIII: A judgment in favor of Plaintiff against all Defendants, jointly and severally, for treble the amount of damages through Defendants' predicate acts and violations of Sections 1962(a) and (c) of RICO, together with treble the amount the value of the Software through the Defendants' predicate acts and RICO violations.

206.   AS TO COUNTS IV: Injunctive relief preventing the continuous transfer of Plaintiff intellectual property under the Agreement, together with attorney's fees, costs, damages including consequential damages, and any other relief this Court finds just and fair.

**JURY DEMAND**

Plaintiff hereby demands a Trial by Jury on all issues triable.

Dated this 8th day of January, 2021.

Respectfully Yours,

**DIEGO DAVID VALDES, P.A.**
2350 Coral Way, Suite 403B
Miami, FL 33145
Tel: 305-910-6602
Fax: 305-513-5924

By: */s/ Diego David Valdes*
Diego David Valdes, Esq.
Florida State Bar No.: 251010
Email:        ddvlaw@gmail.com
              ddv@ddvlawgroup.com
Attorney for Plaintiff: iHealthcare, Inc.